UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT BOUVIER | : | |
| | : | |
| v. | : | C.A. No. 11-478M |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint

on October 29, 2011 seeking to reverse the decision of the Commissioner.  On May 13, 2012,

Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 8).  On July

11, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the

Commissioner.  (Document No. 10).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent legal research, I find that there is substantial evidence in this record

to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion

to Reverse the Decision of the  Commissioner  (Document No. 8) be DENIED.

### I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 17, 2009 alleging disability since September

14, 2007.[1]  (Tr. 164-170).  Plaintiff's date last insured for DIB is December 31, 2012.  (Tr. 197).

The application was denied initially on July 10, 2009 (Tr. 65-67) and on reconsideration on January

8, 2010.  (Tr. 70-72).  On January 29, 2010, Plaintiff requested an administrative hearing.  (Tr. 73-

74).  On January 21, 2011, a brief hearing was held before Administrative Law Judge Martha Bower

(the "ALJ") but postponed because Plaintiff submitted 2,000 pages of new information just prior to

the hearing, and the ALJ needed additional time to review the material.  (Tr. 50-54).  A subsequent

hearing was held on May 19, 2011 before the ALJ at which time Plaintiff, represented by counsel,

a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 25-45).  The

ALJ issued an unfavorable decision to Plaintiff on June 8, 2011. (Tr. 4-16).  The Appeals Council

denied Plaintiff's Request for Review, therefore the ALJ's decision became final.  (Tr. 1-3).  A

timely appeal was then filed with this Court.

### II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ misinterpreted the medical evidence and erred by finding that

he only had a moderate limitation in his ability to sustain social interaction.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's conclusions are

supported by substantial evidence and must be affirmed.

---

[1]  Prior to the hearing, Plaintiff amended his onset date from September 14, 2007, the date he lost his job as a school custodian due to repeated intoxication at work, to November 2, 2008, the date Plaintiff indicates that he stopped drinking.  (Tr. 28, 32).

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).   In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

###    E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.   Pain

"Pain can constitute a significant non-exertional impairment."  <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's
statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must
articulate specific and adequate reasons for doing so, or the record must be obvious as to the
credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly
articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829
F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires
that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d
24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when
credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352
(11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination
is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the
implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d
1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was fifty years old on the date of the ALJ's decision.  (Tr. 197).  He completed the
tenth grade (Tr. 205) and has worked in the relevant past as a school custodian from 1992 to 2007
and served honorably in the National Guard from 1982 to 2003.  (Tr. 208).  Plaintiff alleges
disability due to depression, post-traumatic stress disorder ("PTSD"), loss of hearing, tinnitus,
alcoholism and acid reflux.  (Tr. 201).

Plaintiff voluntary presented to Gateway Healthcare on November 18, 2008, because he believed his life was falling apart due to his chronic alcoholism. (Tr. 400). He described his alcohol abuse and explained that he also received treatment for PTSD from the Veteran's Administration ("VA"). (Tr. 400-411). Plaintiff was examined and diagnosed with alcohol dependence, depression and PTSD. (Tr. 412-414). At this time, his Global Assessment of Functioning ("GAF") score was 48. (Tr. 414). By January 15, 2009, however, his GAF score improved to 55. (Tr. 380).

Plaintiff presented to the VA's PTSD clinic on January 29, 2009 for a scheduled medication management and psychotherapy follow-up visit. (Tr. 371). Plaintiff reported that he was now three months sober and was doing "ok." (Tr. 371). An objective mental status exam did not yield any abnormal findings, prompting Dr. Pamela Bochiecho to echo her previous observation that Plaintiff's symptoms were "now improving with consistent use of medication and sobriety." (Tr. 373-374). She also explained that Plaintiff was tolerating his medications well and without any side effects. (Tr. 374). She noted Plaintiff's ongoing PTSD diagnosis and assessed a GAF score of 55. Id.

Plaintiff presented to the VA's PTSD clinic on March 19, 2009 for a scheduled medication management and psychotherapy follow-up visit. (Tr. 323). Plaintiff reported intermittent nightmares, but explained that he was doing well and had an improved mood. Id. An objective mental status exam did not yield any abnormal findings, prompting Dr. Bochiecho to note that Plaintiff's symptoms were "now improving with consistent use of medication and sobriety." (Tr. 325-326). Although she noted Plaintiff's ongoing PTSD diagnosis and documented the related symptoms reported by Plaintiff, she once again assessed an improved GAF score of 62. (Tr. 326).

On June 3, 2009, Plaintiff was examined at the VA by Dr. Connie DiLeonardo.  (Tr. 504). She explained that despite suffering from long-standing PTSD, Plaintiff was able to maintain full-time employment for fourteen years with some reported difficulty with agitation, focus and concentration.  (Tr. 504-505).  In recent years, however, his PTSD exacerbated his alcohol abuse and symptoms.  (Tr. 505).  In fact, Plaintiff lost his job as a school custodian because of repeated intoxication at work.  Id.  Plaintiff, however, was now taking steps to maintain his sobriety.  Id. Plaintiff reported symptoms of severe depression, anxiety and PTSD.  Id.  However, his objective mental status exam yielded normal results apart from a depressed mood and sad affect, which the examiner noted were appropriate given the context of the exam.  (Tr. 510-511).  The examiner diagnosed chronic PTSD and alcohol dependence in partial remission.  (Tr. 511).  She also assigned a GAF score of 48-50, and opined that Plaintiff could not work mostly due to the fact that his PTSD made it impossible for him to be around other people.  (Tr. 512).  She found that Plaintiff should be considered extremely impaired in the occupational domain and unemployable at this time.  Id.

On June 11, 2009, just eight days after Dr. DiLeonardo opined that Plaintiff was not employable, an interim assessment was performed at Gateway Healthcare.  (Tr. 416).  Though Plaintiff continued to be diagnosed with PTSD, depression and alcohol dependence, his GAF score was rated at 60.  (Tr. 416-417).  Similarly, on September 17, 2009, Dr. Joseph Jefferson of the VA assessed a GAF score of 65.  (Tr. 2121).  Dr. Jefferson explained that Plaintiff was experiencing overall improvement in his mood and behavior with consistent use of medications and sobriety.  (Tr. 2120-2121).

On June 29, 2009, Dr. Michael Slavit, a nonexamining consultant, reviewed Plaintiff's treatment records and offered an opinion regarding his mental residual functional capacity ("RFC").

(Tr. 452).  Dr. Slavit opined that despite Plaintiff's PTSD and alcohol dependence, he retained the mental RFC to perform routine tasks, sustain for two-hour blocks over an eight-hour workday, sustain at least superficial work relationships and make work decisions regarding objects and routine procedures.  Id.

Plaintiff completed the residential sober-house program at Gateway Healthcare in October 2009 and moved into his brother's house.  (Tr. 1040).  At that time, his GAF score was rated at 60 by Dr. Travis Cook (Tr. 2096) and 65 by Dr. Jefferson.  (Tr. 2099).  Plaintiff, however, was concerned that he could not live on his own, and on October 26, 2009 presented for admission into another in-patient program through the VA in Massachusetts.  (Tr. 1040).  At this time, Plaintiff's objective mental status exam was normal, apart from an anxious mood and affect.  (Tr. 1030-1031). Plaintiff completed six weeks of treatment, and on December 7, 2009, was discharged.  (Tr. 889). Upon discharge, Plaintiff was instructed to resume outpatient treatment through the VA in Providence.  (Tr. 891).

Plaintiff presented to the VA's PTSD clinic on December 10, 2009, for a scheduled medication management and psychotherapy follow-up visit with Dr. Jefferson.  (Tr. 2085).  Plaintiff reported that, overall, his mood was good.  (Tr. 2086).  Plaintiff did attribute some current anxiety due to being out of a controlled environment and thinking about Christmas.  Id.  Although Plaintiff reported ongoing PTSD symptoms, he expressed a desire to start doing some volunteer work, perhaps at a kennel, and noted that he planned to start martial arts classes soon.  Id.  An objective mental status exam yielded no abnormal findings, and he was assessed a GAF score of 65.  (Tr. 2088).  Mental status exams were conducted on December 29, 2009; January 5, 2010; and January 12, 2010.  (Tr. 2018, 2031-2032, 2048).  Each exam yielded no abnormal results.  Id.

-14-

Plaintiff presented to the VA's PTSD clinic on February 11, 2010 for a scheduled medication management and psychotherapy follow-up visit with Dr. Jefferson. (Tr. 1863). Plaintiff reported that he was living in his brother-in-law's apartment and that it was a stable and pleasurable living situation. (Tr. 1864). Plaintiff's objective mental status exam yielded no abnormal findings. (Tr. 1866). Dr. Jefferson assessed Plaintiff's GAF score at 60. (Tr. 1867).

Dr. Jefferson examined Plaintiff on April 15, 2010. (Tr. 1947). Plaintiff reported feeling pretty good, despite finalizing his divorce one week prior. Id. He denied any significant psycho-social stressors and reported stable interpersonal relations. Id. However, Plaintiff did report ongoing nightmares and poor concentration. Id. Plaintiff reported that he enjoyed playing guitar, working out, and remaining actively engaged with his support groups. (Tr. 1948). Plaintiff also noted that he planned to start doing volunteer work in the VA program. Id. The objective mental status exam yielded no normal findings and noted no deficits in attention/concentration. (Tr. 1950). Dr. Jefferson assessed a GAF score of 60. Id.

Plaintiff underwent treatment on May 11, 2010. (Tr. 1934). At that time he reported interrupted sleep, up and down mood and poor concentration. Id. He also indicated that he enjoyed participating in his group exercise program "MOVE" and taking guitar lessons. Id. An objective mental status exam yielded relatively normal/appropriate results, and Plaintiff's GAF score was rated at 60. (Tr. 1936).

Plaintiff presented to the VA's PTSD clinic on July 8, 2010 for a scheduled medication management and psychotherapy follow-up visit. (Tr. 1765). This was his first visit with Dr. Sparsha Reddy, a psychiatry resident. Id. Plaintiff continued to report PTSD symptoms such as flashbacks – mostly improved, and explained that he enjoyed camping, looked forward to planning

a yearly skydiving trip, started playing guitar and loved doing sodoku puzzles.  (Tr. 1765-1766).

An objective mental status exam yielded no abnormal findings.  (Tr. 1768).  Dr. Reddy noted that

Plaintiff was tolerating his medications well and with no adverse side effects and assessed a GAF

score of 60.  Id.

Dr. Reddy again examined Plaintiff on October 4, 2010.  (Tr. 1729).  He reported that he

stayed engaged by participating in multiple activities/groups throughout the week, and was enjoying

taking guitar lessons.  Id.  He added that he was doing well overall.  Id.  Plaintiff's objective mental

status exam once again yielded no abnormal results, and Dr. Reddy again assigned a GAF score of

60.  (Tr. 1729, 1731).

Dr. Reddy next examined Plaintiff on November 4, 2010.  (Tr. 1704).  Plaintiff reported that

his regular group meetings at the VA were a useful place to socialize and improve his interpersonal

communication.  Id.  Plaintiff's objective mental status exam continued to yield relatively normal

results, and Dr. Reddy continued to assess a GAF score of 60.  (Tr. 1706-1707).  Dr. Reddy assessed

similar findings on December 9, 2010.  (Tr. 1667-1671).

Dr. Reddy next examined Plaintiff on March 24, 2011.  (Tr. 2926).  Plaintiff continued to

report PTSD symptoms, (Tr. 2927) and his objective mental status exam continued to yield no

abnormal results.  (Tr. 2929).  Dr. Reddy found that Plaintiff was tolerating his medications well and

with no side effects and found no reason to change them.  (Tr. 2929).  Dr. Reddy again assessed a

GAF score of 60.  (Tr. 2930).

On May 5, 2011, Dr. Reddy offered her opinion regarding Plaintiff's mental RFC.  (Tr.

3028-3032).  She opined that Plaintiff suffered from a number of marked limitations in the domains

of sustained concentration and persistence, social interaction, and adaptation.  (Tr. 3028-3029).  She

explained that she did not think Plaintiff could tolerate a work environment that required frequent social interaction or sustained mental effort.  (Tr. 3030).  She also reported that Plaintiff's medications caused the following side-effects: weight gain, insomnia, upset stomach and increased anxiety.  (Tr. 3031).  She further opined that Plaintiff would have "moderately severe" limitations with regard to relating to other people; understanding, remembering, and carrying out instructions; responding to co-workers; responding to customary work pressures; and performing varied tasks.  (Tr. 3031-3032).  She expressed that these limitations would cause daily interruptions to work activity, and the levels of limitation had existed for the past five years.  (Tr. 3032).  Finally, Dr. Reddy opined that Plaintiff would likely miss more than three days of work each month and could not sustain full-time employment.  Id.

A.    **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff's depression, PTSD, alcoholism and cirrhosis of the liver are "severe" impairments as defined in 20 C.F.R. § 404.1520(c).  (Tr. 9).  The ALJ concluded that Plaintiff had the RFC to perform light work with a moderate limitation in the ability to sustain social interactions, requiring an object-oriented task with only occasional work-related interacting with supervisors, co-workers and the general public.  (Tr. 11).  Based on this RFC and testimony from the VE, the ALJ found that Plaintiff was not disabled because he is capable of performing various unskilled light and sedentary jobs available in the economy.  (Tr. 15-16).

B.    **Plaintiff Has Not Shown Any Error in the ALJ's Evaluation of the Medical Evidence**

-17-

This is a close case, and the record contains conflicting medical evidence.  While reasonable minds could differ as to the interpretation of the medical evidence, the issue is not whether this Court would have reached the same conclusion as did the ALJ because "[t]he ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 255597 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987). Thus, the issue presented to this Court is whether the ALJ's conclusions and RFC finding have adequate support in the record.  Since they do, there is no basis upon which to reject them in this case.

Here, Plaintiff argues that the ALJ erred by giving less weight to the mental RFC assessment rendered by Dr. Reddy, a treating psychiatrist, and affording more weight to the opinions of Dr. Gitlow, the testifying medical expert, and Dr. Slavit, a consulting psychologist.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be

evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

Plaintiff began treating with Dr. Reddy on July 8, 2010 (Tr. 1765) and saw her for several follow-up visits in subsequent months (Tr. 1729-1730, 1706-1707, 1667-1671 and 2926-2930).  The ALJ accurately observed that Dr. Reddy noted in December 2010 that Plaintiff reported "doing ok" with some difficulty sleeping and better energy.  (Tr. 1667-1668).  Dr. Reddy confirmed the diagnoses of chronic PTSD, alcohol dependence in full sustained remission and a GAF of 60 or moderate symptoms.  (Tr. 1670-1671).  Dr. Reddy made similar findings in March 2011 when Plaintiff reported that he was "doing alright."  (Tr. 2926-2930).  On May 5, 2011 (two weeks prior to the ALJ hearing), Dr. Reddy completed a mental RFC assessment presumably at the request of Plaintiff's counsel in which she indicated, inter alia, that she did not think Plaintiff was "able to tolerate working in an environment that requires freq. social interactions and sustained mental efforts as he has diff. concentrating, exaggerated startle response, avoidance of env. stimuli/triggers (avoids crowds, never stands with his back to anyone, etc.)."  (Tr. 3030).  She concluded that although Plaintiff had a mild limitation in his ability to respond appropriately to supervision, he had a moderately severe impairment in his ability to relate to other people and respond appropriately to co-workers.  (Tr. 3031).

The ALJ discussed this RFC assessment in her decision and found that it was inconsistent with the record as a whole including Dr. Reddy's own progress notes which indicated Plaintiff was doing well and assessed a GAF of 60 reflecting only moderate symptoms.  (Tr. 14-15).  Further, the ALJ gave more weight to Dr. Slavit's opinion that Plaintiff is capable of unskilled, object-oriented

work.  (Tr. 14).  Dr. Slavit also noted that Plaintiff could sustain at least superficial work relationships.  (Tr. 452).

Additionally, the ALJ discussed Dr. Gitlow's testimony in her opinion and gave it more weight because it was consistent with the record as a whole and Dr. Gitlow had the "advantage of reviewing the entire medical record and listening to [Plaintiff's] testimony at the hearing." (Tr. 14). Dr. Gitlow, a specialist in psychiatry and addiction medicine, testified that Plaintiff's mental status began to improve after he attained sobriety in 2008 and that, by July 2009, "his mental status exam was largely intact with no significant difficulties." (Tr. 35-36).  Dr. Gitlow acknowledged Plaintiff's chronic PTSD-related symptoms but opined that Plaintiff's social limitations were "moderate in nature." (Tr. 36).  Finally, Dr. Gitlow addressed Dr. Litchman's contrary opinion (Tr. 616) that Plaintiff had marked limitations in social functioning. (Tr. 38).  Dr. Gitlow found Dr. Litchman's conclusion to be a "little puzzling" since Plaintiff engaged in activities requiring "one-to-one instruction that would be comparable in nature to the type of supervision one might have in doing simple-step tasks." (Tr. 38-39).

As previously noted, this is a close case with conflicting medical opinions.  The ALJ thoroughly and accurately discussed the medical evidence in her decision and clearly articulates the reasons for her conclusions including her decision not to give controlling weight to Dr. Reddy's opinions.  See Rivera-Torres v. Sec'y of HHS, 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).  While reasonable minds may disagree with the ALJ's ultimate conclusions, Plaintiff has not shown any error in the ALJ's reasoning or flaw in the medical evidence relied upon which would warrant a reversal and remand.  Since the ALJ's RFC

assessment is supported by competent medical evidence of record, it is entitled to deference, and the

ALJ's non-disability finding must be affirmed.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's

Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.  Further, I

recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with

the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 6, 2012